# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,        )
                                )

   **v.**                        )       **Crim. ID No. 2401004948**
                                )       **Cr. A. No. IN24-01-0976**

**AMMANUEL FALICE**       )

Submitted: May 1, 2026
Decided: July 27, 2026

*Upon Defendant Ammanuel Falice's*
*Motion for Postconviction Relief,*
**DENIED.**

## ORDER

Upon consideration of the Defendant's Motion for Postconviction Relief (D.I. 13), the State's response (D.I. 20),[1] his trial/plea counsel's affidavit (D.I. 18), Defendant's replies (D.I. 21 and 22), and the record in this matter, it appears to the Court that:

---

[1]   To the extent Mr. Falice suggests that the Court shouldn't consider what he believes is the State's tardy response and should instead grant him default judgment on this Rule 61 petition, the Court declines to do so. *See* D.I. 21. It appears from the Prothonotary's date stamp that the State's response was indeed timely. *See* D.I. 20. But even were it not, the Court has the discretion to still consider it. *See Tilghman v. State*, 2002 WL 31107054, at *1 (Del. Sept. 19, 2002) (this Court may permit an extension to file a response in a postconviction matter, particularly when there has been no showing of prejudice); *Johnson v. State*, 2015 WL 6726278, at *3 n.12 (Del. Nov. 2, 2015) (noting that the granting of such an extension, even when untimely sought, is a matter of this Court's discretion).

## FACTUAL[2] AND PROCEDURAL BACKGROUND

(1)   These multiple offenses arose from an incident that occurred in January 2024.  One Thursday evening, Defendant Ammanuel Falice travelled to the Newark home of his ex-girlfriend's new romantic interest.  He parked his car approximately one-quarter mile therefrom, approached by foot, and waited in an adjoining tree line.  When the victim turned on an inside light, Mr. Falice fired multiple shots at and into the bathroom his target was then occupying.  The police were called by numerous neighbors and responded immediately.

(2)   Mr. Falice was caught just a few houses from the crime scene.  He was out-of-breath, wearing all dark clothing, and secreting a 9mm handgun (that still had a round chambered) in one jacket pocket and the magazine for such in another.

(3)   Via on-scene investigation, seven 9mm casings were recovered from the neighboring yard by a fence south of the victim's residence.  Bullets had damaged windows, a baseboard, walls, cabinets and a toilet in the bathroom.  Later firearm-identification testing matched the gun Mr. Falice was carrying to the shooting.

(4)   In July 2024, Defendant Ammanuel Falice, was indicted for one count

---

[2]   The factual background underlying Mr. Falice's charges is derived from the presentations made at Mr. Falice's plea/sentencing hearing (D.I. 26) and the arrest warrant issued by the Justice of the Peace Court. (D.I. 1).

each of: attempted first-degree assault, first-degree reckless endangering, possession of a firearm during the commission of a felony (PFDCF), carrying a concealed firearm, and criminal mischief-misdemeanor.[3]

(5) At a case review proceeding, Mr. Falice pleaded guilty to the single PFDCF count.[4] He did so in exchange for the State's: dismissal of the three other felony and one misdemeanor counts and its joinder in a favorable sentencing recommendation of the minimum statutory sentence for that crime.[5]

(6) Mr. Falice was immediately sentenced to serve ten years imprisonment suspended after three years (the mandatory minimum term required by 11 *Del. C.* § 1447A) for 18 months of probation.[6]

(7) Mr. Falice prosecuted no direct appeal from his conviction or sentence.

(8) Now before the Court is Mr. Falice's timely Motion for Postconviction Relief that he has filed under Superior Court Criminal Rule 61.[7] In his motion, Mr. Falice challenges the validity of his plea and sentencing proceedings, asserting claims of ineffective assistance of counsel. Specifically,

---

[3]  D.I. 7 (Indictment).

[4]  D.I. 8 (Plea Agreement).

[5]  *Id.* at 1 ("State and Defendant request . . . 10 years suspended after 3 (min/man) for 1 year level III probation.).

[6]  D.I. 11 (Sentence Order).

[7]  D.I. 13.

Mr. Falice alleges that his trial/plea counsel, Lauren N. Brown, Esquire, was deficient in the following respects: (a) failing to assert or adequately pursue his mental health issues so as to obtain a better plea offer from the State; and (b) "fail[ing] to present existing mitigating factors to the sentencing court for a reduced sentence."[8]

## RULE 61'S PROCEDURAL BARS

(9)    Delaware courts must consider Criminal Rule 61's procedural requirements before addressing any substantive issues.[9]  The procedural bars set out within Rule 61 are timeliness, repetitiveness, procedural default, and former adjudication.[10]  Of these, only one is relevant here.

(10)  Rule 61(i)(3) bars any particular claim that could have been but was not raised at the trial/plea proceedings or on direct appeal, unless the defendant can show cause for relief from the procedural default and prejudice.[11]  Generally, Rule 61(i)(3) is inapplicable to claims of ineffective assistance of counsel—which in the

---

[8]   *Id*.

[9]   *Maxion v. State*, 686 A.2d 148, 150 (Del. 1996); *State v. Jones*, 2002 WL 31028584, at *2 (Del. Super. Ct. Sept. 10, 2002).

[10]   Del. Super. Ct. R. P. 61(i); *State v. Peters*, 283 A.3d 668, 680 (Del. Super. Ct. 2022), *aff'd*, 299 A.3d 1 (Del. 2023).

[11]   Super. Ct. Crim. R. 61(i)(3) ("Any ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the movant shows . . . [c]ause for relief from the procedural default and . . . [p]rejudice from violation of the movant's rights.").

-4-

norm can't be raised against trial/plea counsel on direct appeal.[12]  And so, the Court usually considers those claims on their merits during postconviction proceedings.[13]

### MR. FALICE'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS FAIL.

(11)  A claim of ineffective assistance of counsel is reviewed under the familiar two-part *Strickland v. Washington* test.[14]  A claimant asserting ineffective assistance of counsel must demonstrate that: (i) his defense counsel's representation fell below an objective standard of reasonableness and (ii) there is a reasonable probability that, but for counsel's errors, the result of his proceedings would have been different—often referred to as the "prejudice prong."[15]  An inmate must satisfy the proof requirements of both prongs—deficient performance and prejudice—to succeed in making an ineffective assistance of counsel claim.[16]  Failure to do so on either will doom the claim, in which case, the Court need not address the other.[17]

---

[12]  *Green v. State*, 238 A.3d 160, 175 (Del. 2020); *see State v. Caulk*, 2021 WL 2662250, at *5 (Del. Super. Ct. June 29, 2021) ("Though [the Rule 61(i)(3)] bar is inapplicable to allegations of ineffective assistance of counsel that, in all but the rarest of circumstances, couldn't have been raised on direct appeal.").

[13]  *State v. Martin*, 2024 WL 3273429, at *2 (Del. Super. Ct. July 1, 2024), .

[14]  *Neal v. State*, 80 A.3d 935, 941 (Del. 2013); *see generally Strickland v. Washington*, 466 U.S. 668 (1984).

[15]  *Strickland*, 466 U.S. at 688–94 (1984); *Neal*, 80 A.3d at 941–42.

[16]  *Strickland*, 466 U.S. at 687; *Ploof v. State*, 75 A.3d 811, 825 (Del. 2013)(*Ploof I*); *Neal*, 80 A.3d at 942; *Peters*, 283 A.3d at 681.

[17]  *Strickland*, 466 U.S. at 687; *Ploof I*, 75 A.3d at 825; *Peters*, 283 A.3d at 681.

(12) The Court first turns to Mr. Falice's complaints of deficient performance. To satisfy the performance prong, he must show that his counsel's conduct fell below an objective standard of reasonableness—such "that no reasonable lawyer would have conducted the defense as his lawyer did."[18] For "a lawyer's performance is constitutionally deficient only if no competent attorney would have chosen the challenged course of action."[19] It's not the role of the Court to determine "what the best lawyers would have done . . . [or] even what most good lawyers would have done."[20] "Instead, the Court must determine whether . . . 'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment.'"[21] There is always a strong presumption that counsel's representation was reasonable.[22] And it is now well-accepted, that where "an attorney makes a strategic choice after thorough investigation of law and facts relevant to plausible options, the presumption that an attorney acted reasonably is virtually unchallengeable."[23]

---

[18] *Green*, 238 A.3d at 174 (citing *Burger v. Kemp*, 483 U.S. 776, 791 (1987)); *Strickland*, 466 U.S. at 687.

[19] *Id.* at 178 (citing *Premo v. Moore*, 562 U.S. 115, 124 (2011)).

[20] *Id.* (alterations in original) (quoting *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992)).

[21] *State v. Peters*, 283 A.3d 668, 686 (Del. Super. Ct. 2022) (alteration in original) (quoting *Hoskins v. State*, 102 A.3d 724, 730 (Del. 2014)).

[22] *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).

[23] *Cooke v. State*, 338 A.3d 418, 455 (Del. 2025) (cleaned up); *Purnell v. State*, 106 A.3d 337, 342 (Del. 2014); *Hoskins v. State*, 102 A.3d 724, 733 (Del. 2014) (quoting *Ploof v. State*, 75 A.3d 840, 852 (Del. 2013) (*Ploof II*) (quoting *Strickland*, 466 U.S. at 690-91)).

(13) Mr. Falice posits that Ms. Brown was constitutionally ineffective when she did not further pursue investigation of his mental health issues to obtain a better plea offer from the State.[24] According to Mr. Falice, had his counsel obtained more information regarding his mental health history she "could have used this information to present to the State for a reduced plea offer"[25] and the information he suggests was missing or ignored "should be more than enough for the state to consider a reduced plea offer especially for a first time offender with no criminal history."[26] But Mr. Falice's complaints and assumptions are belied by the postconviction record.

(14) The record reflects that Ms. Brown was aware of Mr. Falice's mental health history.[27] Counsel had a Forensic Social Specialist interview Mr. Falice, investigate his social and mental health history, and provide an evaluation of his case.[28] With that, Ms. Brown "determined that the best course of action would be to develop a mitigation report, given Mr. Falice's lack of criminal history and mental health concerns."[29] Ms. Brown determined there was no good faith basis for any viable mental health defense to his culpability: "Instead, the focus was

---

[24] *See generally* D.I. 13, 21, and 22.

[25] D.I. 13 at 3-4.

[26] D.I. 21 at 2.

[27] Ms. Brown's Affidavit Pursuant to Superior Court Criminal Rule 61(g) (D.I. 18).

[28] *Id.* at 1.

[29] *Id.*

mitigation."[30] The materials submitted to the Court evidence that Ms. Brown investigated and was abreast of Mr. Falice's mental health issues and used that information during plea negotiations and sentencing.[31]

(15) Ms. Brown attempted to utilize Mr. Falice's background throughout her representation. She shared evidence of his mental health issues during plea negotiations. During his plea colloquy, Mr. Falice said that he discussed the defenses he believed were available to him with Ms. Brown and was ultimately satisfied with her as his counsel.[32] And during Mr. Falice's sentencing, Ms. Brown highlighted his mental health issues and need for treatment as a mitigating factor.[33]

(16) There simply was nothing deficient or unreasonable about Ms. Brown's approach to Mr. Falice's. She had used it to obtain the best plea bargain possible for her client and to try to convince the Court to impose the

---

[30] *Id.*

[31] *Id.* (attaching mitigation report).

[32] Plea Hearing Tr. 9-10 (D.I. 26):

| COURT: | Have you also discussed with [Ms. Brown] the evidence in your case, any defenses you think you might have, and asked her any questions so you fully understand what you're doing by pleaing guilty? |
| MR. FALICE: | Yes. |
| COURT: | Are you satisfied with her representation of you? |
| MR. FALICE: | Yes. |
| COURT: | Do you believe that Ms. Brown has done all she can reasonably do for you in relation to the charges you face? |
| MR. FALICE: | Yes. |

[33] *Id.* at 11-12.

statutory minimum sentence which the State and Mr. Falice had agreed to recommend. Given the overwhelming evidence of Mr. Falice's guilt for this violent crime and the lack of other options, this stratagem was wholly reasonable.[34]

(17) The analysis could end there[35] but even were Mr. Falice to demonstrate the requisite deficient attorney performance on his claim—which, again, he hasn't—he falls well short of demonstrating resultant and required prejudice.

(18) When addressing the prejudice prong of the ineffective assistance of counsel test in the context of a challenged guilty plea, an inmate must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[36] "Where the alleged error of counsel is a failure to investigate, a determination of 'prejudice' to the defendant by causing him to plead guilty depends upon the likelihood that the additional effort by counsel would have led to a change in counsel's

---

[34] *See Sartin v. State*, 2014 WL 5392047, at *3 (Del. Oct. 21, 2014) (no ineffectiveness where counsel determined his client's mental health issues didn't rise to the level of a viable defense, but counsel tried to use issues to lessen the severity of his sentence).

[35] *Strickland*, 466 U.S. at 687; *Ploof I*, 75 A.3d at 825; *Peters*, 283 A.3d at 681 ("A movant must satisfy both prongs—deficient attorney performance and resulting prejudice—to succeed in making an ineffective assistance of counsel claim. Failure to do so on either prong will doom the claim, and the Court need not address the other.").

[36] *Albury v. State*, 551 A.2d 53, 60 (Del. 1988) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)); *Sartin v. State*, 2014 WL 5392047, at *2 (Del. Oct. 21, 2014); *State v. Hackett*, 2005 WL 3060976, at *3 (Del. Super. Ct. Nov. 15, 2005).

recommendation as to that plea."[37]  And when addressing the prejudice prong of the ineffective assistance of counsel test in the context of a sentencing hearing, an inmate must show that "there is a reasonable probability that, but for counsel's error, the result of [his] sentencing would have been different."[38]

(19)  Now as to any such claim, "*Strickland*'s second part—the prejudice prong—presents another arduous standard."[39] "The likelihood of a different result must be substantial, not just conceivable."[40]  And while the "objective inquiry is not mathematically precise," there can only be a finding of the required prejudice "when there is a substantial likelihood—*i.e.*, a meaningful chance—that a different outcome would have occurred but for counsel's deficient performance."[41]

(20)  It appears Mr. Falice is saying that had his counsel better-developed his mental health history for presentation, he would have been offered and entered a more favorable plea.[42]  But this suggestion that the State would have offered a

---

[37]  *Kinderman v. State*, 302 A.3d 407, 415 (Del. 2023) (quoting *Albury*, 551 A.2d at 59).

[38]  *Brawley v. State*, 1992 WL 353838, at *1 (Del. Oct. 7, 1992); *State v. Lindsey*, 2023 WL 2535895, at * 10 (Del. Super. Ct. Mar. 16, 2023), *aff'd*, 2023 WL 8232287 (Del. Nov. 27, 2023).

[39]  *Cooke*, 338 A.3d at 455 (citing Green, 238 A.3d at 174).

[40]  *Starling v. State*, 130 A.3d 316, 325 (Del. 2015) (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)); *see Strickland*, 466 U.S. at 693 ("It is not enough for the [postconviction movant] to show that the errors had some conceivable effect on the outcome of the proceeding.  Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." (citation omitted)).

[41]  *Baynum v. State*, 211 A.3d 1075, 1084 (Del. 2019) (citing *Harrington*, 562 U.S. at 112).

[42]  *See generally* D.I. 13, 21, and 22.

-10-

better plea had Ms. Brown done more is wholly conclusory. There is no evidence that State would have changed its position on the plea offered.

(21) "*Strickland* requires more than a showing merely that [even deficient attorney] conduct could have, or might have, or it is possible that it would have led to a different result."[43] Yet, Mr. Falice offers nothing more than his own bald prediction that had his counsel developed more on his mental health history she could have somehow forced the prosecution to tender a reduced plea offer.[44] And moreover, says Mr. Falice, the missing information would have been such that the State would no doubt have offered a more favorable deal.[45] This does not come close to the demonstration of prejudice required.[46]

(22) And as to Mr. Falice's suggestion that some failure on Ms. Brown's part "to present existing mitigating factors to the sentencing court for a reduced sentence,"[47] that too would fail under any prejudice analysis. As mentioned earlier, the Court imposed the statutory minimum for his PFDCF conviction.[48] In

---

[43]  *Neal v. State*, 80 A.3d 935, 942 (Del. 2013) (cleaned up).

[44]  D.I. 13 at 3-4.

[45]  D.I. 21 at 2.

[46]  *See, e.g., Outten v. State*, 720 A.2d 547, 553 (Del. 1998) ("The conclusory allegation that the presentation of additional witnesses . . . would have influenced the jurors to vote for a life sentence, is not sufficiently specific to demonstrate actual prejudice.") (cleaned up); *id*. at 557 (When alleging ineffective assistance, the movant "must substantiate his concrete allegations of actual prejudice or else risk summary dismissal.") (cleaned up).

[47]  D.I. 13.

[48]  D.I. 11 (Sentence Order). *See* Del. Code Ann. tit. 11, § 1447A(b) (2023) ("A person convicted [of PFDCF] shall receive a minimum sentence of 3 years at Level V.").

turn, there was no reduced sentence to attain. And so, in *Strickland* terms there simply is no reasonable probability—*i.e.*, no meaningful chance—that, but for Ms. Brown's supposed failure, Mr. Falice would have received a sentence of less than the three years his PFDCF conviction mandated.[49] Indeed, there was absolutely no possibility or chance of him receiving less than the statutory minimum that he did.

(23)  Mr. Falice has proved neither deficient performance by counsel nor the prejudice required for postconviction relief to be granted on his ineffectiveness claim. Resultingly, Mr. Falice's Rule 61 motion for postconviction relief is **DENIED**.

**SO ORDERED,**

/s/ *Paul R. Wallace*
Paul R. Wallace, Judge

Original to Prothonotary
cc:  Mr. Ammanuel Falice, *pro se*
      Lauren N. Brown, Esquire
      Isaac A. Rank, Deputy Attorney General

---

[49] *See Harden v. State*, 180 A.3d 1037, 1045 (Del. 2018) (noting that in this context, "a reasonable probability is the probability sufficient to sway a reasonable sentencing judge to decide [Mr. Falice's] sentence differently") (cleaned up).